# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* C.A.-1 and K.E.

No. 19-0780 (Raleigh County 18-JA-271-P and 18-JA-272-P)

**FILED**
**April 6, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother S.E., by counsel Thomas H. Evans III, appeals the Circuit Court of Raleigh County's July 24, 2019, order terminating her parental rights to C.A.-1 and K.E.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), R. Stephen Davis, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period, terminating her parental rights, and failing to state sufficient findings of fact and conclusions of law to support the termination of her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Following the filing of a child abuse and neglect petition in October of 2018, the DHHR filed an amended petition in January of 2019 alleging that petitioner failed to protect the children from C.A.-1's father, C.A.-2, after the children disclosed that he had touched them inappropriately. According to the DHHR, the children disclosed that C.A.-2 masturbated in front of them, stripped K.A. of her clothes and touched her vagina, and that C.A.-1 ran from his father to avoid similar treatment. During an interview with the DHHR, petitioner admitted that the children disclosed the abuse to her, but she did not report the allegations to law enforcement because "she wanted to get

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because a child and his father share the same initials, we refer to them as C.A.-1 and C.A.-2, respectively, throughout this memorandum decision.

proof." Petitioner further admitted that she continued to associate with C.A.-2 after her children disclosed the abuse. Ultimately, the children's grandmother reported the abuse to law enforcement and the DHHR. The DHHR further alleged that petitioner was participating in drug screening and had tested positive for tetrahydrocannabinol ("THC") four times and methamphetamine once. Finally, the DHHR alleged that C.A.-2 previously relinquished his parental rights to C.A.-1 in response to a child abuse and neglect petition alleging that he subjected petitioner to domestic abuse. Petitioner waived her preliminary hearing.

At the adjudicatory hearing in May of 2019, petitioner stipulated to the allegations contained in the petitions. The circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent. Petitioner then moved for a post-adjudicatory improvement period and argued that she was willing to participate in the terms of an improvement period. In support, petitioner referenced a court-ordered psychological evaluation she completed, but she presented no other testimony or documents to support her motion. The DHHR and guardian objected to petitioner's motion and referenced petitioner's statements in the psychological evaluation that she acknowledged her substance abuse, but had no intention of stopping the same. Further, the DHHR noted concerns that petitioner would continue to allow C.A.-2 around the children if they were returned to her care. Ultimately, the circuit court denied petitioner's motion for a post-adjudicatory improvement period.

The circuit court held a dispositional hearing. The DHHR called a Raleigh County Day Report Center ("DRC") representative who testified that petitioner produced positive drug screens throughout the proceedings. According to the DRC representative, petitioner consistently tested positive for THC and methamphetamine and tested positive for hydrocodone and hydromorphone on one occasion. The DRC representative clarified that a positive result for methamphetamine indicated illicit drug use and was not indicative of any prescription medications. A DHHR worker testified that petitioner had not notified him that she had been prescribed any medications. The worker testified that the psychological evaluation recommended that petitioner participate in intensive outpatient substance abuse treatment and parenting and adult life skills, but that the DHHR did not offer those services to her because petitioner continued to test positive for controlled substances and had not made any improvement regarding her substance use.

Petitioner testified that she ceased her relationship with C.A.-2 after the filing of the petition. Petitioner reiterated that her children disclosed that C.A.-2 sexually abused them, but stated "the fact of that matter is . . . that I was trying to get more evidence that he had physically done something to them." Petitioner testified that she ordered hidden cameras from Amazon to aid in gathering evidence. Petitioner then explained that C.A.-2 "proved to me . . . a few years ago that I didn't know if I could trust him alone with [the children]." According to petitioner,

> the reason this happened is because I did have to go to work that night, and I was three hours late for work because I'm assuming that [C.A.-2] turned my alarm clock off that night . . . and made me late, spitefully, for work. And I was forced to leave my children there.

Petitioner clarified that when C.A.-2 "was sober," he was "decent" and tried to be "some kind of role model . . . for [the] children," but "he was drunk more than not." In regard to her substance

abuse, petitioner testified that she did not think she had a drug problem. Petitioner disclosed to the DHHR that she smoked marijuana and had done so since she was eleven years old for "anxiety" and to avoid "falling asleep [while] driving." She explained that the psychiatrist tried "to put me on some other psychiatric drugs and I have since refused to take those." Petitioner testified that she participated in two counseling sessions with her psychiatrist since May of 2019, and would start outpatient substance abuse counseling later in July of 2019. Following petitioner's testimony, she orally moved for a dispositional improvement period.

Ultimately, the circuit court found that substance abuse was a "main issue" of the proceedings and, although petitioner was aware of the emphasis placed on treating her substance abuse, she had "a history of failed drug testing during the proceedings." The court noted that petitioner failed to obtain any substance abuse counseling or treatment prior to the dispositional hearing. In regard to petitioner's failure to protect her children, the circuit court found "overwhelming" evidence that petitioner exercised poor judgment related to C.A.-2. The court found petitioner had taken no steps to obtain any counseling that would improve her judgment in the future and ensure the safety of her children. The court further stated that petitioner had "ample opportunity prior to these proceedings . . . to address[] the issues" or "show[] a willingness to address the issues which may have justified an improvement period," but had failed to do so. The circuit court concluded that there was no reasonable likelihood that these conditions could be substantially corrected in the near future and that termination of petitioner's parental rights was in the children's best interests. Accordingly, the circuit court terminated petitioner's parental rights by its July 24, 2019, order.[2]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon review, this Court finds no error in the proceedings below.

---

[2]As stated above, C.A.-2 previously relinquished his parental rights to his child. K.E.'s father's parental rights were involuntarily terminated in 2015. According to the parties, the permanency plan for the children is adoption in their current relative foster placement.

On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period despite her stipulation and acknowledgment of the abuse and neglect of the children. Petitioner asserts that she presented clear and convincing evidence that she would have participated in an improvement period that consisted of "oral argument by counsel." We find this argument to be meritless.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." We have noted that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). "Additionally, if a parent is unable to demonstrate an ability to correct the underlying conditions of abuse and/or neglect in the near future, termination of parental rights may proceed without the utilization of an improvement period." *In re Charity H.*, 215 W. Va. 208, 216, 599 S.E.2d 631, 639 (2004). Here, petitioner failed to show that she was likely to fully participate in an improvement period. In support of her motion, petitioner referenced only the fact that she participated in a psychological evaluation. However, the resulting psychological report included her express statements that she would not cease her controlled substance abuse, which would have been a requirement of an improvement period. The report also included her statements that C.A.-2 was "good to [her] kids" and that she had a "'doubt in [her] mind' that the allegations [that he touched them inappropriately were] true." The report's ultimate conclusion provided a "poor" prognosis for petitioner to obtain minimally adequate parenting due to her persistent involvement in volatile relationships, exposure of the children to domestic violence and foreseeable harm, and chronic substance abuse. As petitioner indicated an unwillingness to cease substance abuse, a certain term of her improvement period, we find that the circuit court did not err in denying petitioner's motion for a post-adjudicatory improvement period.

This evidence also supports the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts may terminate a parent's parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and termination is necessary for the welfare of the child. A circuit court may find that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected" when "the abusing parent . . . [has] habitually abused . . . controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired." W. Va. Code § 49-4-604(c). Here, the circuit court's finding that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected were supported by evidence that petitioner was aware that her substance abuse was a "main issue" in the case, but continued to abuse controlled substances throughout. Further, the circuit court found that petitioner exhibited poor parental judgment that exposed the children to potential harm.

On appeal, petitioner does not challenge this finding, but instead challenges the circuit court's finding that termination was in the children's best interests and necessary for their welfare. Petitioner argues that the children were placed with a family member and that she could have been a proper parent if given the appropriate tools. Yet, it is axiomatic that the children's welfare would not be served in petitioner's custody if she continued to abuse controlled substances. Further, to the extent petitioner argues she may be an appropriate parent if given the proper tools, we have

4

held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child[ren] will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part. Petitioner was aware of the issues alleged in the petition, specifically substance abuse, but made no attempt to obtain substance abuse counseling. The court was not required to wait for petitioner to attempt treatment before proceeding towards permanency for the children. Finally, "[e]nsuring finality for these children is vital to safeguarding their best interests so that they may have permanency and not be continually shuttled from placement to placement." *In re Cesar L.*, 221 W. Va. 249, 258, 654 S.E.2d 373, 382 (2007). The circuit court's termination of petitioner's parental rights is consistent with the children's best interests as termination permits adoption and permanent placement for them. Accordingly, we find no error in the circuit court's finding that termination was in the children's best interests and necessary for their welfare.

Finally, petitioner argues that the circuit court failed to make adequate findings of fact and conclusions of law in the final dispositional order. Rule 36 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings provides that "[a]t the conclusion of the disposition hearing, the court shall make findings of fact and conclusions of law, in writing *or on the record*, as to the appropriate disposition in accordance with the provisions of W. Va. Code § 49-4-604." (emphasis added). While we acknowledge that the circuit court's final order is somewhat limited in its findings of fact and conclusions of law, the circuit court provided ample findings on the record, many of which have been reproduced in this decision. Rule 36 expressly permits that such findings may be made on the record, a point petitioner seemingly ignores in her argument. Therefore, we find no error in the circuit court's findings of fact or conclusions of law as they are sufficiently detailed for appellate review.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 24, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: April 6, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins

**DISQUALIFIED:**

Justice John A. Hutchison